please the court. My name is Marshall Ellis and I represent the appellant in this matter Lenair Moses. The issue in this case is whether section 1B 1.3's application note 5c is controlling an entitled to hour deference after the Supreme Court's 2019 decision in Kaiser versus Wilkie. Here the district court specifically relied upon application note 5c to count as a prior conviction for a controlled substance offense under the career offender guideline a 2013 North Carolina. Let me just get the let me get the structure so we're talking about the same thing. Yes sir. We have a 2013 offense for which Mr. Moses was convicted and sentenced and served time and then we have a 2018 offense of similar kind which is at hand here and your argument is that the two offenses are that the 13 offense is relevant conduct for the current offense. That's correct your honor. And even though the interruption is there? That's correct your honor because I don't believe that the interruption is necessarily dispositive under the guidelines framework that were offered in 1B 1.3a 2. And that's what your theory we'd go back we could get a 2011 drug distribution count of 2006 and count it all as relevant conduct instead of prior offenses. Even though he is sentenced and convicted for the prior conduct which I suppose is a conviction counts as a conviction doesn't it? Well it's a conviction but just because it's a conviction that doesn't mean it counts as criminal history. I'm talking about saying the conviction itself is not what carries the day in the analysis. It's the conduct underlying the conviction which 1B 1.3a 2 is looking at. That's why anything that's anything that's relevant conduct cannot be considered a conviction under your argument. Anything that's relevant conduct well my argument is that the conviction does not necessarily matter. It's well it right you're saying this was counted this this 2013 conviction was counted in order to enhance the Senate and it was counted as a conviction. Your argument is that it should not be counted because the conduct underlying that conviction was relevant conduct to the current conviction. That's correct your honor. Okay yes and since the district court in this case made that decision that it is criminal history rather than relevant conduct solely relying upon application of 5C and because of the Supreme Court's 2019 decision in Kaiser that particular application note is not entitled to our deference and the district court was wrong to rely upon that particular application. So you agree that if we have if we apply the guidelines and the commentary then your argument is 5C right? That's correct. If 5C is going here I lose. I would not deny that your honor. Yes sir. All right so you want us to overlook 5C which explains how to do relevant conduct. I want this court to not give it our deference and I essentially am saying that that particular application note is not interpreting the term. So in guidelines the policy statements and the commentary are all have the force of law and the only time that we look away from the commentary is when it's inconsistent with the guideline and in the sense that both cannot be enforced. That's true as to what Stinson said. And so you're saying Kaiser overruled Stinson. I think Kaiser says what Stinson meant to say all along. Well except in Stinson you remember the court spent a lot of time talking about the nature of the guidelines. The Commission did the commentary to explain the policy statements and they gave them all the force of law and they didn't talk about ambiguity. They talked about inconsistency and they gave that a narrow interpretation. Because of the nature of the Commission and the guidelines. And while it's analogous to an agency they did not require there be an ambiguity in the guideline in order to apply the commentary. If that were so we would not be able to apply the commentary in most of our guideline applications because the guidelines are almost always ambiguous. The commentary explains them and talks about how they're being applied. The question is I know you rely on Kaiser and Kaiser gives you a lot of help in the agency context. But the question is Kaiser didn't report overruled Stinson did it? Kaiser did not overrule Stinson. Again I think Kaiser essentially is saying what Stinson meant to say all along. So they misspoke in Stinson. I'm not saying they necessarily misspoke. I'm saying they didn't quite say everything they meant to say as to that particular issue in that case. They said a lot. They discussed the relationship between the commentary and the guidelines at length. They explained the nature the force it was carrying policy statements. They had an earlier opinion that said policy statements carry the force of law. Okay I understand your position. Yeah. Yes sir. Essentially that's that is my position is that Kaiser is changing the analysis that Stinson once gave us with respect to guidelines commentary. Mr. Ellison let me ask you this. Let's set aside 5C. All right. Let's take it out of the analysis. You don't want us to consider that. You consider that just an arbitrary rule. Otherwise Mr. Moses is 2013 under your argument is going to count as relevant conduct under 1B 1.13A2. Okay. And I think you make two arguments. First thing you say is well the government waived any argument that there's no evidence that the 2013 and the 2018 are part of the same common schema plan or same course of conduct because they didn't raise that at sentencing. And then the corollary to that is you say we can look at this PSR and conclude that that the 2013 the 2018 are part of a common schema plan or the and I'm having a hard time finding evidence that's undisputed that would satisfy either one of those. Whether common schema plan or same course of conduct. We're talking about same course of conduct, single episodes, spree, regularity. You've got five years in one month between the 2013 the 2018. So I don't think that fits. I think you're arguing common scheme or plan and you you make this argument well all of these distributions occurred in this Bragg Street neighborhood. That's not in the PSR. All we know is that he he dealt a small amount of crack in 2013 in Raleigh and Wake County and he did the same in 2018. You also ask us to infer that you know he did these things in order to support himself. He's a low-level drug distributor and that's what we should infer. Why should we infer that? I mean the PSR also says he's a member of the Nine Trey Bloods. I mean how do we know that in 2013 he wasn't dealing for the gang and in 2018 he was supporting himself. So point me to specific evidence in the PSR that supports your argument. Set aside 5C that you have satisfied that. I understand the court's concern completely and essentially what I think I've done here is possibly made a mistake in my briefs and even arguing that because I think what we're getting at right now is a task that's best left to the district court to make factual findings and conduct the appropriate legal analysis under 1B 1.3 A2 and then application of 5B. That's not a task for this court to do and I was wrong in my opinion to even suggest that it was in my briefs. So I think we're getting our head of ourselves with your question as to what specific factors there are in the P or facts I should say there are in the PSR that support same course of conduct their common scheme or plan. I think so you're conceding that there isn't sufficient evidence we can't establish that if we rule in your favor on the 5C. It has to go back. I'm saying it has to go back for further factual findings by the district court as to that particular question you are asking. Let me ask you this. This is a little puzzling to me what you're asking. The pre-sentence report lists a conviction in 2013. He served three and a half years. He got sentenced and had a conviction. So now he's no longer distributing drugs while he's in prison. The court counted that conviction as a predicate offense for career offender as the career offender statute allows any prior conviction that of that drug type and you're saying we shouldn't count it and then you're saying but we have a question of fact we should send it back to decide whether it's a common scheme? That's correct your honor. That is exactly what I'm asking you to do. Why isn't it a prior conviction and satisfies the career offender enhancement? It's not well I think that would be something that's left to the district court to determine based on. Except the pre-sentence report pointed out there was a conviction there was a sentence and he served the time. That's right. And so we have under the definitions of the enhancement which is career offender enhancement we have a prior conviction don't we? It's no question we have a conviction. I would disagree because again when you're looking at what is a prior conviction. That's not a conviction? I'm not saying it's not a conviction I'm saying that's what that's what the enhancement requires. In other words we don't even need to get under the other stuff we just go to we just go to the career offender enhancement and say does it satisfy the face of that enhancement. So when you look at the career... 4B1.1. Yes sir and then 4B1.2 tells you what is a prior sentence of imprisonment for purposes of 4B1.1. 4B1.2 says that a prior sentence of imprisonment has to do with calculating sentences based on chapter 4A of the guidelines and that's where the 1B1.3A2 comes into play and with respect to my argument because it's not necessarily the conviction itself that matters it's whether it's a prior sentence under chapter 4B1 point or excuse me section 4A1.2. And you don't think it's a prior sentence? I do not think it's a prior sentence. What was he doing in jail? Your honor I don't think he spent three and a half years in jail. The time in jail is not dispositive and I think there was an 11th Circuit case that I cited in my brief that specifically referenced that that said that even though the defendant has served time in jail in between two separate acts that actually involved two soporandis they were still relevant conduct to each other even though he had spent time in jail so that's what I'm getting at. When the court convicts somebody and imposes a sentence and he serves time we don't call it a conviction in sentence? I'm not saying you don't call it a conviction in sentence I'm saying it's not necessarily a prior sentence of imprisonment under section 4A1.2 of the guidelines. All right. And I think what this all gets back to the significance of application of 5C. So in other words you can be looking at conduct underlying two different offenses and trying to assess whether they're relevant to each other under 1B1.3A2 and you can go through the analysis under section or I should say application of 5B and determine that they are related because 5B is sort of the classic interpretive guideline commentary that's giving you specific factors to consider specific definitions of what the terms mean. It's not dictating a result it's just telling you how to apply the guideline. So you can come to one result under 5B only to then keep reading right beneath it and get to 5C and be required to completely reverse the decision that you just reached under 5B. And that's essentially what I'm getting at. In your argument Mr. Ellis there would be whether it's our or Stenson even under Stenson it's inconsistent with because it essentially draws a an arbitrary line. Let me ask you you cite three cases the Shell case Havis and Riccardi. All right. And these are cases where the Sixth Circuit in one case the Fourth Circuit in the I believe in Riccardi they applied our deference the others are Stenson cases. But all those cases held that the commentary was inconsistent in the guideline provision couldn't bear the weight of the commentary. So the right the commentary goes. But aren't those cases different in that in Shell they were adding the to the definition of a crime of violence forcible sex offense and Havis adding an attempt definition to a controlled substance offense. Riccardi it was essentially setting an arbitrary loss amount for use of access device at $500 regardless of how much the loss actually was. As I understand the court's concern in those cases it was that the commentary was broadening the scope of the guideline to sweep in more potential criminal conduct. Whereas here it's restrictive right and arguably it's protective to everyone but career offenders granted. So respond to that. These cases are different and does the fact it's restrictive matter and undermine your argument. I totally agree that they are a little bit of a different nuance to the issue but at the end of the day they're all involving the same problem. So in Havis and all the other Inquit offense cases you have essentially the guidelines setting a general standard. That is what is the term controlled substance offense means. In Riccardi you have the same thing happening except it's not saying what the term controlled substance offense means it's saying what the term loss means. In this case you have the guideline itself saying that when calculating the offense level consider all other acts that were part of the same course of conduct or a common scheme or plan as the offensive conviction. And then in this case as well as in the others you have the problematic commentary in each case changing the outcome that you would have reached if you were left with that text alone and other interpretive commentary. So that's what I think the the issue is here is that the problematic commentary is changing the outcome. But wouldn't common sense wouldn't common sense say that if somebody was dealing drugs in a neighborhood and got convicted and sentenced and was removed from the neighborhood for three years and then came back to the neighborhood and did it again would you call that the same course of conduct under any kind of common sense? I think you could your honor if the other evidentiary factors were there like whether it was part of the same or whether it involved the same area whether involved the same drug. He did the same stuff he knows the area he did the same stuff but why isn't it another conviction? In other words why isn't it a new conduct that's again violating the law in the same way? Okay but I understand what you're arguing why don't we hear from Mr. Bragdon. Yes sir. Good morning may it please the court my name is David Bragdon and I represent the United States. I'd like to start by taking issue with with one factual thing that the defendant said and and that is I think the court did not specifically rely on commentary 5c and so the court's judgment is at page 111 and it appears to be a factual determination by the general area that drugs is being sold it's not part of the course of conduct and so I think the court can rule in our favor for either of two reasons either because it finds that commentary note 5c is is valid or because it finds that regardless of that this is not the same course of conduct or common schema plan. I do think that you know with respect to note 5c I understand the defendant's argument to be that if this is relevant conduct then under the various application notes under under chapter 4 that means it can't also be a conviction that counts so it's got to be one or the other it's either got to be relevant conduct or or accounting conviction we don't disagree with that and so then the question is well is application note 5c a correct interpretation of what this means and this is an application note that's been around for about 30 years in November it'll be 30 years it's never been questioned or thrown out by any court and I think it is it does conduct a very reasonable balance as to where to draw the line of what counts because the whole purpose of this application note is to prevent double counting of conduct the defendant was previously convicted and sentenced on and so if this application note is thrown out a defendant could get a conviction get sentenced for that maybe for a very long sentence he could then be convicted again and that conduct that he already received a sentence for could serve as the basis for a higher guideline range and while that might well that might help this defendant and some career offender defendants in general that's a rule that's not going to be helpful or fair to most defendants. I think Mr. Bragg and Mr. Ellis makes the argument that may be all fine and well as a matter of policy but shouldn't that then be part of the guideline itself in other words this is a it serves an important purpose and I take your point but what about that right should be part of the the normal course of notice and comment if you want to do that do it the right way. So so then I think we have to ask the question of well is that a rule that is inconsistent with it and I do not think that rule is inconsistent with the language and if we focus on course of conduct common scheme or plan these are broad ambiguous words and so when we start asking well can a conviction you've already been sentenced on these part of the same course of conduct or common scheme or plan I I think the the the general answer I would think of to that is is no a conviction you've already been sentenced on seems like it wouldn't be part of the same course of conduct or common scheme or plan. And maybe Mr. Moses isn't a good test case right and I think Mr. Ellis might concede that he might not but can't you envision a scenario where you know somebody's in a conspiracy there's a state conviction he's in jail for one day he gets out and he's right back in doing the same things in the same area with the same accomplices. Yes so so maybe maybe that does present a closer case and I know that the government has taken the position in the past that for instance conduct that proceed you know if there's a conviction in the middle say you know the defendant is come you know part of some illegal conspiracy he gets convicted and then he continues the legal conspiracy but the conviction and the sentence is for something different. We sometimes take the position of well you may have gone to jail for 30 days or 60 days but this is still one scheme overall. But I think that that still begs the question of does that specific conviction that you've gotten a sentence for is that going to be counted and I think the fact that you've received that the defendant has received a sentence for that does separate it in a way that maybe just a short stint in jail or a conviction with a suspended sentence doesn't and and I think I think that both Kaiser and Stenson allow agency some degree of policy description they know that the agency understands the regulation better they know that they understand the purposes and the reasons behind it better and so the the agency then gets to say well this is going to be much more logically in line with the purpose and the basis of the rule and so when you have an ambiguous rule like you do here and you have an interpretation of that that fits very well within the purpose of the rule I think this court should give that discretion unless it's inconsistent and and I don't see it as being inconsistent so I think I think that's a lot of our arguments I think I will say just a couple more things on the 5c rule this court multiple times has applied that rule it's been an unpublished decisions the Second Circuit in a published decision applied the rule and kind of explained the purpose behind it no court has has struck down or questioned the validity of 5c and it also fits with this general idea I think we put in the language of we put in there one of the purpose when when they were thinking about this rule they were thinking about it as being similar to the joinder provision where you join you know counts in one indictment and again that that presumes the idea we are not going to join a count in an indictment if there's already been a conviction for it and that's a little bit of legislative history because it's it's something that the one of the authors of the sentencing guidelines put in in an article it's not part of the guidelines itself but I think when we look at the guidelines as a whole this fits very neatly with the structure there's a rigid separation between relevant conduct what's counting for the offense and on the other hand you know the criminal history and the defendant kind of the defendants throwing out of this rule would merge those things together and so I I think that's that's what we would say I do not think I need to add anything else as far as our arguments on the merits as to why this is is not course of conduct or common scheme or plan but I'll answer any questions the court has otherwise I'll rest on our briefs all right thank you mr. Bracken mr. Ellis you have some rebuttal yes sir thank you very much thank you mr. Bracken as far as the contention here that the district court did not specifically rely upon application of 5c I think that's wrong mr. Bracken pointed you out to page 111 but you have to read page 111 of the joint appendix in conjunction with what came before and that's where on page 104 the district court specifically asked me at sentencing so you're saying I should disregard application of 5c and I of course said yes she then said let me go to the government now do you agree I should ignore but note 5c so when you read that in conjunction with page 111 I think it's really clear here that 5c is the underpinning of the district court's decision and it's that which ultimately led her to overrule my objection and to sentence mr. Moses as a career offender moving on into the government's claim that 5c again I've heard multiple times that they're saying that 5c is an interpretation of the language of 1b 1.3 a2 and I just think that's not correct I think 5c is not an interpretation 5c is essentially a legislative policy rule on the part of the sentencing Commission and there you know the hidden thing here is the sentencing Commission I'm not saying they're not free to make this rule they just have to do it through the notice and comment rulemaking process by including this rule in the actual guideline text itself and not the commentary well it went through the whole notice and commentary didn't it I mean they the whole process was put together as a package and I don't know if you'd call it an agency their their role is analogous to an agency but they really are a strange a body in our constitutional structure here you have Congress committing to this Commission a broad range of authority under 994 H and and this body created of federal judges coming creating this body of law and they created as a package so it wasn't it was it it was structured in such a fashion that they would give you the general rule and then they give you the explanation and they would also distinguish between the general rule and the policy statement and and so that's what Stinson tried to address I think I think and and Kaiser of course is is not even in the guidelines context it's in a different one but it did address our deference as you as you pointed out right and the Kaiser opinion does make mention of Stinson yeah they have it no let's get right to the issue here as far as step one through three and the text here we all agree is same course of conduct common scheme or plan that's the guideline text we're looking at we have to first ask whether that's ambiguous or not sounds like we're both agreeing that it is ambiguous if it's ambiguous we can then look to the commentary for potential guidance not automatic guidance but potential guidance and that last part is what we're where we're agreeing here we are saying that application of 5c is not a reasonable interpretation of 5 or excuse me 1 b 1.3 a 2 we're saying it's essentially a legislative rule that's effectively just an exception to the general rule what's the same as it was in Ricardi with respect to the gift cards that was you know the loss amount for the gift cards and Ricardi it was you know the guideline or the application of 4 2 b 1.1 tells you what loss means and how it's the greater of actual or intended loss and then it gets all the way to part F of that particular application of where it says special rules that's essentially the same thing we've got here and that's why we'd ultimately be asking the court to do exactly what Ricardi did and say that 5c cannot receive our deference I didn't want to briefly address the the government's essentially argument that what what drastic effect is this going to have for other defendants I think it's wrong to do that because these should always be case-by-case determinations it obviously helps mr. Moses here and to the concern that it might hurt a potential defendant in the future let's remember that the guidelines do give defendants the potential to get credit towards their federal sentence for any sentences imposed that were part of the relevant conduct in this case and that specifically comes from guidelines sections 5g 1.3 and 5k 2.2 3 I don't want the court to be to lose track of that but the guidelines do account for giving defendants credit for sentences that have already been served that are related conduct and as you know the potential effect here that or the claim that Moses isn't a good test case I would not concede that I just think we don't have enough of a record here from the district court to definitively say that right now and again she made her decision based on application of 5c and we're asking for this case to be remanded with specific instructions to make further findings without reliance on 5c and I say I'm out of time thank you very much Thank You mr. Ellis I know you're court-appointed I'd like to recognize your service and our appreciation for your service you did a fine job as a matter of fact this is a interesting point and you obviously have explored it at some depth we also welcome again mr. Bragdon and his argument we normally would come down and shake your hands we're gonna have to use this greeting and our appreciation for your arguments as a substitute but I know we'll see you both many times hence it almost like this pandemic gets under control somebody needs to help us there thanks a lot and have a good day we'll adjourn court till 7 a.m. thank you very much thank you this honorable court adjourns until this afternoon God save the United States and this honorable court
judges: Paul V. Niemeyer, Robert B. King, Thomas T. Cullen